IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| **ROBERT EDWARDS, et al.,** : <br> : <br> *Plaintiffs,* : <br> : <br> v. : <br> : <br> **JBS SOUDERTON, INC.,** : <br> : <br> *Defendant.* : <br> : | **CIVIL ACTION** <br><br> **No. 23-1789** |

### MEMORANDUM OPINION

**Goldberg, J.**                                                                                                    **July 8, 2025**

Defendant JBS Souderton moves to dismiss the harassment, discrimination, and retaliation claims made by its former employees on the grounds that the allegation fail to state viable claims on which relief can be granted. Defendant also moves to strike all of Plaintiffs' class action allegations. For the reasons which follow, the motion to dismiss will be granted in part and denied in part, and the motion to strike the class allegations will be denied.

### I.   FACTUAL AND PROCEDURAL BACKGROUND

The nine Plaintiffs, nine of them, filed their Second Amended Complaint ("Complaint") against Defendant JBS Souderton, Inc. ("Defendant" or "JBS"), a beef processing facility in Souderton, PA. Plaintiffs are all Black current or former JBS employees who allege they suffered an array of discriminatory actions in violation of the Civil Rights Act of 1866, 42 U.S.C. § 1981. Two of the named plaintiffs also assert claims under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq.* ("FMLA").

Plaintiffs began working at JBS in the late 2000s and 2010s, holding various positions throughout their tenure. All of the Plaintiffs allege they suffered discrimination because of JBS's

1

policies and practices, which were intended to discriminate against Black employees. Specifically, Plaintiffs allege that non-Black JBS employees and supervisors incessantly used English and Spanish-language racial slurs such "n----" and "moyo," and that management was aware of this but did nothing to stop it.[1]

The nine individual Plaintiffs, Edwards, Butts, Meyers, Jones, Megginson, Skinner, Prince, J. Robinson, and H. Robinson, all assert disparate treatment claims under Section 1981, albeit on slightly different theories of liability. The alleged claims include: failure to hire, failure to promote, wage discrimination, including in the allocation of overtime, unlawful demotion, and unlawful termination, including constructive discharge. Plaintiffs Jones and H. Robinson also raise retaliation claims based on their reports of discriminatory conduct. Plaintiffs also seek to represent a class of Black employees who suffered discrimination at the hands of JBS Souderton, including those who were denied employment because of their race after applying for employment, those whose wages were less than the wages paid to employees outside the protected class, those who were unlawfully denied promotions, and those who were unlawfully terminated. The proposed class period is from May 15, 2015 to May 15, 2019.

I. **LEGAL STANDARDS**

To survive a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), a complaint must "contain sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 570 (2007)). Plausibility requires more than a "sheer possibility that a defendant has acted unlawfully." Id. "Naked assertions" lacking "further factual enhancement" will not suffice to state a claim. Id. (citations omitted).

---

[1] All but Plaintiff Megginson allege hostile work environment claims.

2

To determine the sufficiency of a complaint under Twombly and Iqbal, the court must "tak[e] note of the elements a plaintiff must plead to state a claim" and identify the allegations that, "because they are no more than conclusions, are not entitled to the assumption of truth." Burtch v. Milberg Factors, Inc., 662 F.3d 212, 221 (3d Cir. 2011) (citations omitted). "[W]here there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement for relief." Id. "A complaint that pleads facts merely consistent with a defendant's liability . . . stops short of the line between possibility and plausibility of entitlement to relief." Connelly v. Lane Constr. Co., 809 F.3d 780, 786 (3d Cir. 2016) (internal quotations omitted) (quoting Iqbal, 566 U.S. at 678).

Federal Rule of Civil Procedure 12(f), in turn, provides that the court "may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). However, striking a pleading "is a drastic remedy to be used sparingly because of the difficulty of deciding a case without a factual record." Dann v. Lincoln Nat. Corp., 274 F.R.D. 139, 142 (E.D. Pa. 2011) (quoting BJ Energy, LLC v. PJM Interconnection, LLC, 2010 WL 1491900, at *1 (E.D. Pa. Apr. 13, 2010)) (internal quotation marks omitted). "Thus, although Rule 12(f) grants the court the power to grant a motion to strike, such motions 'are not favored and usually will be denied unless the allegations have no possible relation to the controversy and may cause prejudice to one of the parties, or if the allegations confuse the issues.'" Id. at 142-43 (quoting Wilson v. King, No. 06-2608, 2010 WL 678102 at *2 (E.D. Pa. Feb. 24, 2010) and N. Penn. Transfer, Inc. v. Victaulic Co. of Am., 859 F.Supp. 154, 158 (E.D. Pa. 1994)).

## II. DISCUSSION

### A. Section 1981

The named Plaintiffs broadly raise three claims against Defendant pursuant to Section 1981: hostile work environment, (Count I), disparate treatment (Count II), and retaliation (Count III). However, not every Plaintiff raises all three claims. Plaintiff Megginson is not raising a hostile work environment claim, and only Plaintiffs Jones and H. Robinson are making retaliation claims. As to the disparate treatment claims under Count II, each of the nine Plaintiffs are raising different disparate treatment claims. These include failure to promote or hire, payment of unequal wages, demotion, denial of overtime, unlawful discharge, and constructive discharge.

Section 1981 provides that "all persons . . . shall have the same right . . . to make and enforce contracts, to sue, be parties, give evidence and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens." 42 U.S.C. § 1981(a). The statute defines "make and enforce contracts" as "the making, performance, modification, and termination of contracts, and the enjoyment of all benefits, privileges, terms, and conditions of the contractual relationship." § 1981(b). The Third Circuit has construed the terms of Section 1981 for purposes of an employment discrimination lawsuit to be "generally identical to the elements of an employment discrimination claim under Title VII" of the Civil Rights Act of 1964. Brown v. J. Kaz, Inc., 581 F.3d 175, 181–82 (3d Cir. 2009) (citing Schurr v. Resorts Int'l Hotel, Inc., 196 F.3d 486, 499 (3d Cir. 1999)); see also Castleberry v. STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (analyzing harassment, or hostile work environment claims; disparate treatment claims; and retaliation claims under Title VII rubric).

### 1.  Hostile Work Environment

Plaintiffs Edwards, Butts, Myers, Jones, Skinner, Prince, J. Robinson, and H. Robinson all allege they suffered a hostile work environment based on race, but Defendants challenge only Plaintiff J. Robinson's claim in this motion.  (Def.'s Mot. Dis. 13, ECF No. 55-1).

To state a hostile work environment claim, a plaintiff employee must allege facts plausibly showing that: "(1) the employee suffered intentional discrimination because of his/her [race], (2) the discrimination was severe or pervasive, (3) the discrimination detrimentally affected the plaintiff, (4) the discrimination would detrimentally affect a reasonable person in like circumstances, and (5) the existence of *respondeat superior* liability." Castleberry, 863 F.3d at 263 (alterations in original); see also Verdin v. Weeks Marine Inc., 124 F. App'x 92, 96 (3d Cir. 2005) (citing McKenna v. Pac. Rail Serv., 32 F.3d 820, 826 n.3 (3d Cir. 1994)) (noting same standard for hostile work environment claim under Section 1981 and Title VII).

Plaintiff J. Robinson first alleges that because of understaffing in the "shackler" position at JBS, which was staffed with a disproportionately high number of Black employees, he was made to work harder for less pay.  (See Sec. Am. Compl. ¶¶ 208–11, ECF 48.)  J. Robinson also contends his "exclusively non-[B]lack Hispanic supervisors" frequently referred to Black employees as "moyo," a term he alleges is a Spanish-language slur for Black people. (Id. at ¶¶ 213–14.)

In moving to dismiss this claim, Defendant argues Plaintiff Robinson fails to plausibly allege that the disproportionate number of Black employees in the shackler position was intentional and not the result of some other, more coincidental, reason.  Defendant further contends that "moyo" is not "on its face, objectively offensive," and there are no other facts alleged to suggest this word is in fact a slur, so the severe or pervasive threshold has not been met.  (Def.'s Mot. Dis. 14, ECF No. 55-1.)

Notably, a hostile work environment claim requires allegations of either severe *or* pervasive discrimination, a less exacting standard than requiring both severity and pervasiveness. See Castleberry, 863 F.3d at 264. Thus, while an isolated instance of discrimination may be severe enough to infect a workplace with hostility, many less-severe instances of discrimination may also be pervasive enough to do the same. Id. (citing Jensen v. Potter, 435 F.3d 444, 449 (3d Cir. 2006)). In evaluating whether discrimination rises to the requisite level of severity or pervasiveness, courts consider: the "frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance." Doe v. Triangle Doughnuts, LLC, 472 F. Supp. 3d 115, 132 (E.D. Pa. 2020) (quoting Clark Cnty. Sch. Dist. v. Breeden, 532 U.S. 268, 270–71 (2001)) (internal quotations omitted).

Taking J. Robinson's factual allegation as true that "moyo" is a Spanish-language racial slur for Black people, I find J. Robinson has pled a viable claim. See Castleberry, 863 F.3d at 265 (holding single use of n-word sufficient to state a claim for hostile work environment when spoken by a supervisor). Defendant's reliance on nonbinding cases is unavailing.[2] These cases are factually dissimilar and the terms in dispute were not alleged to be slurs, but only offensive or racially-charged terms.[3] The United States Court of Appeals for the Third Circuit has held that

---

[2] For example, Defendants point to a nonprecedential opinion from the District of South Carolina which held the word "bo," a term with disputed meaning and subjectively offensive to the plaintiff, did not amount to the requisite level of severity to create a hostile work environment. (See Def.'s Mot. to Dis. 15, ECF 55-1 (citing Shaw v. Beaufort Cnty. Sheriff's Off., Civ No. 9:05-3253SB, 2007 WL 2903940, at *28 (D.S.C. Oct. 1, 2007), aff'd, 299 F. App'x 260 (4th Cir. 2008)). Notwithstanding that the Shaw case was decided at summary judgment, the plaintiff did not assert "bo" was a slur, only that it was an offensive term. See Shaw, 2007 WL 2903940, at *5.

[3] Chandler v. La-Z-Boy, Inc., 621 F. Supp. 3d 568, 574 (E.D. Pa. 2022) ("colored girl"); Robinson v. Priority Auto. Huntersville, Inc., 70 F.4th 776, 783 (4th Cir. 2023) ("thugs"); Shaw, 2007 WL 2903940, at *5 ("bo").

allegations of the use of a racial slur by a supervisor is enough to plausibly allege a hostile work environment at the pleading stage. Id. Whether "moyo" is a racial slur against Black people is a question of fact, not appropriate for disposition at this early stage. J. Robinson has therefore stated a hostile work environment claim based on the alleged use of a racial slur, and Defendant's motion to dismiss this claim is denied.[4]

### 2. Disparate Treatment

All nine named Plaintiffs raise disparate treatment claims based on race, and Defendant moves to dismiss all but Plaintiff Butts's constructive discharge claim.

To state a claim for disparate treatment under Section 1981, a "plaintiff must initially plead . . . that, but for race, it would not have suffered the loss of a legally protected right." Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 341 (2020). In the absence of direct evidence of discrimination, Plaintiffs may employ the burden-shifting framework first outlined in McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). Accordingly, they must allege facts sufficient to show that: (1) they are members of a protected class; (2) they were qualified for the position they sought to attain or retain; (3) they suffered an adverse employment action; and (4) the action occurred under circumstances that could give rise to an inference of intentional discrimination. Qin v. Vertex, Inc., 100 F.4th 458, 473 (3d Cir. 2024); Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008) (citing McDonnell Douglas 411 U.S. at 802).

    *a.*    *Failure to Promote and Hire Claims*

---

[4] Because J. Robinson has pled a hostile work environment based on the use of a slur, it is unnecessary to address whether the allegedly segregating working quarters also created a hostile work environment.

Plaintiffs Edwards, Butts, Myers, Jones, Skinner, Prince, and H. Robinson assert claims based on discriminatory failure to hire or promote. Defendant argues these claims should be dismissed because Plaintiffs only make conclusory allegations that the positions they sought were not given to them because of their race without pleading any facts to support their contentions. In other words, because Plaintiffs have failed to allege facts showing they were qualified, the fact that individuals outside of Plaintiffs' race were selected to fill the positions does not give rise to an inference of discrimination.

Defendant's argument is largely correct as to all the Plaintiffs' claims except Plaintiff Skinner, who has made direct and specific allegations of discrimination in the promotion process. Skinner alleges he complained to Supervisor Hugo that he was not advancing at JBS. In response Hugo purportedly told Skinner, "he is black and so he must wait his turn." (ECF 48, ¶ 134.) I find this allegation to be sufficient to survive Defendant's motion.

As to the remaining Plaintiffs' failure to promote claims, their allegations do not plausibly allege that the positions for which they applied were sufficiently similar so as to show they were qualified.[5] As to each individual plaintiff, the Complaint merely alleges each was qualified without explaining how they were qualified for those positions or what their qualifications were. Plaintiffs also allege no facts from which the court can infer they were qualified for the *different* positions they sought. See Breslow v. State St. Corp., Civ. No. 20-212, 2020 WL 3542295, at *3 (E.D. Pa. June 30, 2020) (dismissing Title VII claim where plaintiff alleged no facts in support of

---

[5] Plaintiff Edwards alleges only that he was qualified for the positions, was denied the position because he was black, and that the promotions were given to a less qualified white man and less qualified white woman. (Sec. Am. Compl. ¶¶ 72–79, ECF 48.) To support Plaintiff Butts' claim, he asserts only that he was denied a follow-up interview and Defendant ultimately hired a "Caucasian" to fill the position, failing to even aver he had the skills necessary for the job. (Id. at ¶ 101.) The allegations of Plaintiffs Myers, Jones, Prince, and H. Robinson suffer from the same fatal defect.

her qualifications). The court cannot infer qualification for promotion from the mere fact that plaintiffs were qualified for the positions they were currently holding before applying for their promotions because qualification for the positions being sought is an essential element to stating a viable claim. See Noel v. The Boeing Co., 622 F.3d 266, 274 (3d Cir. 2010), as amended (Oct. 18, 2010) (noting qualification as essential element of failure to promote claim). Thus, the motion to dismiss Plaintiffs' failure to promote claims will be granted as to all of the Plaintiffs except Skinner.

Plaintiffs Edwards, Butts, Myers, and Jones have also pled failure to hire claims. Defendant disputes that these Plaintiffs had the necessary qualifications to be rehired into the same or similar positions that they were in before voluntarily leaving. Plaintiffs argue they were qualified for rehire based on Defendant's policy or practice of rehiring former employees who left in good standing, and it was plausible that Defendant's refusal to rehire them was due to their race. Plaintiffs have thus plausibly alleged they were qualified for the positions they sought, and they all allege they voluntarily left their positions and then sought rehire in either the same or similar positions. At this early stage, I find this is enough to plead a viable claim for failure to hire/rehire and Defendant's motion to dismiss is denied. See McGarrigle v. Cristo Rey Phila. High Sch., Civ. No. 22-4713, 2023 WL 2975870, at *7 (E.D. Pa. Apr. 17, 2023) (noting plaintiff who was already working in a position has alleged qualifications by the "thinnest of margins").

    b.    *Unequal Wages / Overtime*

Plaintiffs Myers, Jones, Megginson, Skinner, J. Robinson, and H. Robinson also assert disparate wage claims and that they were discriminated against in overtime assignments. Defendant alleges that Plaintiffs' wage discrimination claims fail because they have failed to plead sufficiently similar comparators, or that they completed similar work but were not compensated

similarly to other employees who were not in their protected class. In response, Plaintiffs argue that identifying similarly situated non-Black employees who worked the same shifts and reported to the same supervisors but were nonetheless paid more and offered overtime in lieu of Plaintiffs is sufficient to state a claim. (Pls.' Resp. in Opp. 19–20, ECF 58.)

At this early stage, Plaintiffs are not required to *demonstrate* or *prove* the exact tasks of their comparators; instead, that is something they must do in response to a summary judgment motion, after the parties have had the opportunity to engage in fact discovery. See e.g., Nagle v. RMA, The Risk Mgmt. Ass'n, 513 F. Supp. 2d 383, 388–89 (E.D. Pa. 2007) (summary judgment); Lewis v. Kinko's of Ohio, Civ. No. 99-3028, 2004 WL 764382, at *7 (E.D. Pa. Mar. 31, 2004) (summary judgment). Plaintiff Myers avers he was denied advancement to higher paid positions while non-Black, Hispanic employees were promoted, and Plaintiffs Jones and J. Robinson contend they were denied opportunities for overtime, while their non-Black counterparts were given those opportunities. These are not "bare assertions" or a "formulaic recitation of the elements of a claim." Instead, Plaintiffs specifically identify individuals outside the protected class who were treated more favorably and how they were treated more favorably. This is more than just a vague assertion that Defendant treated non-Black employees better than them. See Martinez v. UPMC Susquehanna, 986 F.3d 261, 267 (3d Cir. 2021) ("For instance, a Title VII complainant can allege that his replacement is of a different race. . . . This is a commonsense description of a subsidiary fact, not the ultimate issue the plaintiff must prove.").

Furthermore, Plaintiff Megginson alleges he received a bonus of 15% of his annual salary in contrast to the 20% bonuses which white and non-Black Hispanic employees received. (Sec. Am. Compl. ¶¶ 145–48, ECF 48.) Plaintiff Skinner alleges that non-Black Hispanics hired after him in the same department were paid more money "for less arduous work." (Id. at ¶ 162.)

10

Plaintiff J. Robinson alleges management refused to let him earn over-time pay when more work was to be completed at the end of shift, but instead awarded the overtime to non-Black Hispanic employees.  (Id. at ¶ 214.)  Plaintiff H. Robinson alleges that he earned $57,000 per year as a supervisor while other non-Black supervisors earned $60,000–$75,000 per year.  (Id. at ¶ 231–32.)  These allegations of disparate wages and overtime, coupled with the other allegations of racial hostilities toward Black employees at JBS, sufficiently plead a claim for discrimination in violation of Section 1981. Therefore, Defendant's motion to dismiss as to Plaintiff's disparate wage and overtime claims will be denied.

       c.      *Demotion and Termination*

Plaintiffs Butts, Jones, Skinner, Prince, and J. Robinson also allege they were unlawfully demoted and terminated in violation of Section 1981.  Defendant argues that Plaintiffs have failed to allege either that (1) similarly situated employees outside the protected class were treated more favorably than Plaintiffs, or (2) facts otherwise showing a "causal nexus" between Plaintiffs' races and the adverse employment actions which they suffered.  (Def.'s Mot. to Dis. 15, ECF 55-1 (citing Green v. V.I. Water & Power Auth., 557 F. App'x 189, 195 (3d Cir. 2014).)

Plaintiff Butts alleges that he was demoted from Fab Supervisor to Quality Assurance Technician, replaced with a non-Black Hispanic female employee, and that the decisionmakers were non-Black Hispanic employees.  (Sec. Am. Compl. ¶¶ 96–100, ECF 48.)  Plaintiff Butts further alleges he was called racial slurs by management on a daily basis, and after making a mistake on the floor, his supervisor, who was an African national, called Plaintiff Butts a "dumb 'N---.'"  (Id. at ¶¶ 91–95.)  At this early stage, the plaintiff's burden is not meant to be onerous; a plaintiff must only plausibly allege enough to establish entitlement to present proof of his claims.

11

See Marzano v. Computer Sci. Corp. Inc., 91 F.3d 497, 508 (3d Cir. 1996). Plaintiff Butts has alleged enough to make the "causal nexus" between his race and termination plausible.

Plaintiff Jones alleges he was wrongfully terminated in January 2020 after he complained to a manager that another employee "referred to him as 'N –'" when he "stopped the line" in fulfilling his food safety responsibilities." (Sec. Am. Compl. ¶ 127). Four days later, Jones alleges he was fired "for a pretextual reason – 'lateness.'" (Sec. Am. Compl. ¶ 131). However, he alleges, "other similarly situated employees were not terminated based upon lateness." (Sec. Am. Compl. ¶¶ 140, ECF 48.) Taken together, these are enough to suggest a causal nexus between Plaintiff Jones's race and his termination and to withstand dismissal at this point in the proceedings.

Plaintiffs Prince and Skinner claim their unlawful terminations based on attendance problems was also a pretext for race discrimination. (Id. at ¶¶ 150, 183–189.) Prince fails to allege any facts surrounding the conditions of termination from which it can be inferred that their terminations were racially motivated. Instead, he alleges he was terminated because of his race or, in the alternative, for invoking his FMLA rights, but fails to offer any context to suggest this action was because of his race. Prince avers only that he was terminated for attendance without alleging, for example, any characteristics of his replacement so as to suggest he was replaced by a non-Black employee, or that other non-Black employees were not terminated for lateness. Instead, the pleading suggests that a dispute over vacation time led to Prince's termination. Without more, these allegations do not push Prince's claims over the plausibility line. On the other hand, Skinner alleges non-Black Hispanic employees were rehired after being terminated for lateness. These averments are sufficient, and hence the motion to dismiss Skinner's claim will be denied but Prince's claim will be dismissed.

Plaintiff J. Robinson alleges he was terminated for "dirty Cannabis urines" in contrast to other similarly situated employees who were not terminated, but were instead sent to rehabilitation paid for by Defendant. (Id. at ¶¶ 188, 205, 229.) Again, coupled with the alleged frequent and continued usage of denigrating racial slurs directed toward J. Robinson by supervisors as referenced above, I find this plaintiff has plausibly alleged an unlawful termination claim. See Dudhi v. Temple Health Oaks Lung Ctr., Civ. No. 18-3514, 2019 WL 426145, at *4 (E.D. Pa. Feb. 4, 2019) (plaintiff stated Title VII claim where she was terminated for being missing from the job while Caucasian employees were not terminated for the same).

In sum, I find Plaintiffs Butts, Jones, Skinner, and J. Robinson have sufficiently pled unlawful termination claims, but Prince has not. Prince's claims will therefore be dismissed.

### 3.     Retaliation

Like disparate treatment claims, retaliation claims under Section 1981 are analyzed under the same rubric as claims for retaliation under Title VII. Qin v. Vertex, Inc., 100 F.4th 458, 470 (3d Cir. 2024). To state a prima facie case of retaliation under Section 1981, Plaintiffs must allege facts sufficient to show "(1) [they] engaged in a protected activity, (2) [they] suffered an adverse employment action, and (3) there was a causal connection between the participation in the protected activity and the adverse action." Carvalho-Grevious v. Del. State Univ., 851 F.3d 249, 257 (3d Cir. 2017) (citing Moore v. City of Phila., 461 F.3d 331, 340–41 (3d Cir. 2006)). General complaints of unfair treatment do not constitute protected activity within the meaning of a Section 1981 retaliation claim. See Qin, 100 F.4th at 476. Instead, a plaintiff must have complained about discrimination prohibited by Section 1981 (i.e., racial discrimination). Id.

Defendants argue that while Count Three purports to assert a retaliation claim on behalf of all of the Plaintiffs, only Jones and H. Robinson allege facts that could be so construed. Defendant is

correct that with respect to the other seven Plaintiffs, no facts are alleged that could be interpreted as retaliatory. The motion shall therefore be granted and the retaliation claim is dismissed as to Edwards, Butts, Meyers, Megginson, Prince, Skinner, and J. Robinson.

Defendant does not contest that Plaintiff Jones has stated a claim for retaliation, but it submits that H. Robinson has failed to allege any facts connecting his alleged protected activity to JBS's failure to promote him. On this point, H. Robinson avers that from May 15, 2019 to June 2020, he complained approximately ten times to Human Resources about JBS general manager Scott Halderman's repeated usage of the "the N--- word" in front of Plaintiff J. Robinson, and further referring to him using the same word in front of other employees. In 2021, H. Robinson applied for a position in the Ground Beef Trim Line Department. Halderman was the decision maker and refused to hire him. Defendant argues the temporal proximity between H. Robinson's complaints and the decision to not hire him fails to show a causal connection, citing Britt v. Banks, Civ. No. 19-270, 2019 WL 5078731, at *4 (D.N.J. Oct. 10, 2019). Thus, Defendant suggests too much time elapsed between H. Robinson's complaints and his termination.

The Third Circuit has found two factors are relevant to the causation inquiry for retaliation: timing and evidence of ongoing antagonism. See, McGlone v. Phila. Gas Works, 733 F. App'x 606, 612 (3d Cir. 2018). Britt, upon which JBS relies, holds in relevant part that "courts may also look to the intervening period for other evidence of retaliatory animus." Id. (citing Holt v. Pennsylvania, 683 F. App'x 151, 157 (3d Cir. 2017)). H. Robinson alleges he complained an inordinate number of times about Halderman's racist language, nothing was done by management, and when Halderman was able to be a decisionmaker on H. Robinson's promotion at JBS, he refused to promote him. I find these averments are enough to plausibly allege retaliatory animus

on the part of Defendant against this plaintiff, and the motion to dismiss H. Robinson's retaliation claim under Section 1981 is therefore denied.

### B. FMLA Claims

Plaintiffs Skinner and Prince next assert Defendant terminated them after and because they attempted to take leave under the Family and Medical Leave Act, 29 U.S.C. § 2601, *et seq*. Neither Skinner nor Butts alleges when they attempted to take FMLA leave, nor do they specify the dates on which they were terminated beyond alleging that Skinner was terminated in 2020 and Prince was terminated sometime in 2022. Defendant argues these FMLA claims should be dismissed because these allegations are generally conclusory and unspecific. In response, Plaintiffs assert they are entitled to plead claims in the alternative under Federal Rule of Civil Procedure 18, and their claims should therefore not be dismissed. Because Plaintiffs' have failed to plausibly allege either claim, Defendant's motion to dismiss will be granted and Plaintiffs' claims as to FMLA interference and retaliation will be dismissed.

### 1. FMLA Interference

Plaintiff Skinner alleges that Defendant unlawfully interfered with his right to take protected leave under the FMLA. To state a claim for FMLA interference, Skinner must allege that (1) he was an eligible employee under the FMLA; (2) the defendant was an employer subject to the FMLA's requirements; (3) the plaintiff was entitled to FMLA leave; (4) the plaintiff gave notice to the defendant of his or her intention to take FMLA leave; and (5) the plaintiff was denied benefits to which he or she was entitled under the FMLA. Ross v. Gilhuly, 755 F.3d 185, 191–92 (3d Cir. 2014).

Defendant argues Skinner has failed to sufficiently plead the last three elements. First, Defendant disputes that a contagious eye condition and/or virus entitles Skinner to FMLA leave.

The statute defines "serious health condition" as an "illness, injury, impairment, or physical or mental condition that involves" either "inpatient care in a hospital, hospice, or residential medical care facility" or "continuing treatment by a health care provider." 29 U.S.C. § 2611(11). This Circuit has previously found as a matter of law that a minor stomach ulcer, under the correct circumstances, can amount to a serious medical condition for purposes of FMLA entitlement. See Victorelli v. Shadyside Hosp., 128 F.3d 184 (3d Cir. 1997). Even assuming, *arguendo*, that a contagious eye condition and/or virus is a serious health condition for purposes of the FMLA, Skinner's claim still fails because he has failed to adequately plead the fourth and fifth elements of an interference claim. At no point in the Complaint does Skinner allege he provided Defendant notice of his intent to take FMLA leave or any type of extended leave due to a specific eye and/or viral condition. Instead, he alleges only that he called in "sick" and provided Defendant with a doctor's note. See, Jacobs v. York Union Rescue Mission, Inc., Civ. No. 1:12-0288, 2013 WL 433327 (M.D. Pa. Feb. 5, 2013) (citing 29 C.F.R. § 825.303(b)) ("Simply calling in 'sick' will not trigger an employer's FMLA obligations."). Thus, without providing notice to Defendant of his intent to take FMLA leave, Skinner cannot maintain a cause of action for denial of the benefits to which he would have been entitled under the statute. Skinner's claim for FMLA interference shall therefore be dismissed.

### 2. FMLA Retaliation

Skinner and Prince also both allege they suffered adverse employment actions – termination and failure to promote respectively – for taking leave they were entitled to under the FMLA. In addition to providing substantive rights for employees, the FMLA also protects employees against discrimination for exercising their rights under the Act. Callison v. City of Phila., 430 F.3d 117, 119 (3d Cir. 2005). To state a claim for FMLA retaliation, the plaintiff must

allege facts in support of the prima facie elements of the claim, *i.e.*, that he: (1) invoked his right to FMLA-qualifying leave, (2) suffered an adverse employment decision, and (3) the adverse action was causally related to his invocation of those rights. Lichtenstein v. Univ. of Pittsburgh Med. Ctr., 691 F.3d 294, 301–02 (3d Cir. 2012).

Skinner's FMLA retaliation claim fails for the same reason his FMLA interference claim fails: he failed to allege he ever invoked his right to FMLA leave, and his termination was related to the invocation of this right.

Prince's FMLA retaliation claim fares no better. Prince fails to allege when he invoked his right to FMLA leave, the duration of his leave, or any other facts to plausibly show Defendant failed to promote him to Lead Person (Chubbs Department) because he invoked his FLMA rights. Rather, the Complaint contains only the conclusory allegation that Defendant denied Prince this promotion because he took FMLA leave. (Sec. Am. Compl. ¶ 202, ECF 48.) Without these details, Prince's retaliation claim cannot survive the Defendant's motion to dismiss. Accordingly, Defendant's motion to dismiss both Skinner and Prince's FMLA retaliation claims will be granted.

### 3. Motion to Strike Class Allegations

As noted above, Defendant also moves to strike Plaintiffs' class action allegations from their complaint pursuant to Federal Rules of Civil Procedure 12(f) and 23(d)(1)(D) because, according to Defendant, the class is not ascertainable and the plaintiffs have failed to allege sufficient commonality between all plaintiffs.

Federal Rule of Civil Procedure 12(f) of course allows a court to strike redundant, immaterial, impertinent, or scandalous matter from a pleading, and Rule 23(d)(1)(D) specifically concerns class action litigation. "[A] motion to strike class allegations pursuant to Rule 23(d)(1)(D) 'seems, for all practical purposes, identical to an opposition to a motion for class

certification,' and the rule provides 'the procedural mechanism for striking class allegations . . . once the Court determines that maintenance of the action as a class is inappropriate.'" Salyers v. A.J. Blosenski, Inc., Civ. No. 23-4802, 2024 WL 1773368, at *2 (E.D. Pa. Apr. 24, 2024) (quoting Almond v. Janssen Pharms., Inc., 337 F.R.D. 90, 99 (E.D. Pa. 2020)) (omissions in original). In general, a motion to strike class allegations is resolvable only after a motion for class certification. See Korman v. The Walking Co., 503 F. Supp. 2d 755, 762–63 (E.D. Pa. 2007). Rarely will the complaint itself illustrate the unsuitability of class treatment. Richardson v. Verde Energy USA, Inc., 354 F. Supp.3d 639, 654 (E.D. Pa. 2018).

To maintain a class action, Plaintiffs must satisfy the prerequisite requirements of Rule 23(a) as well as one of the three types of class actions contemplated by Rule 23(b). Here, Plaintiffs bring this putative class action pursuant to Federal Rule of Civil Procedure 23(b)(2) or (3). (Sec. Am. Compl. ¶¶ 96–100, ECF 48.) In moving to strike the class allegations from Plaintiffs' Complaint, Defendant first argues that the class is not ascertainable from the face of the Complaint, and second, that there is insufficient commonality between the class members as needed to maintain class status. In response, Plaintiffs argue that their pleading deficiencies related to ascertainability are curable, and the complaint sufficiently pleads commonality.

No matter the procedural device used to challenge class certification on the pleadings, courts within the Third Circuit have generally held this inappropriate. See e.g., Vlachos v. Choice One Cmty. Fed. Credit Union, Civ. No. 3:11-57, 2011 U.S. Dist. LEXIS 84403, at *8–10 (M.D. Pa. May 16, 2011) (noting even where defendant's argument is persuasive and plaintiff's response sparse, it is not appropriate to strike class allegations pre-discovery); Luppino v. Mercedes-Benz USA, LLC, Civ. No. 09-5582, 2013 WL 6047556, at *7 (D.N.J. Nov. 12, 2013) (collecting cases and denying motion to strike class allegations as premature); Haggart v. Endogastric Sols., Inc.,

18

Civ. No. 10-0346, 2011 WL 466684, at *5 (W.D. Pa. Feb. 4, 2011) (noting court will not use motion to dismiss to preempt plaintiff's class certification motion). Furthermore, while the Third Circuit has not explicitly addressed the appropriate procedural device to challenge class certification on the proceedings, if appropriate at all, it has noted that determining whether the requirements of Rule 23 have been met requires "rigorous analysis" by the district court, requiring some level of discovery. Landsman & Funk PC v. Skinder-Strauss Assocs., 640 F.3d 72 (3d Cir. 2011), opinion reinstated in part, No. 09-3105, 2012 WL 2052685 (3d Cir. Apr. 17, 2012) (citations omitted).

Given this precedent, I find it would be inappropriate at this early stage of the proceedings to strike class allegations under Rules 12(f) or 23(d)(1)(D), as it would, in effect, be a ruling on the merits of Plaintiffs' future motion for class certification before facts relevant to the suitability of class treatment are discoverable. See Korman v. Walking Co., 503 F. Supp. 2d 755, 762 (E.D. Pa. 2007). Accordingly, the motion to strike class allegations shall be denied without prejudice and Plaintiffs will be afforded the opportunity to engage in some class discovery and move for preliminary certification, if warranted.

## IV. CONCLUSION

For all the reasons set forth above, Defendant's motion will be granted in part and denied in part as follows. Because Plaintiffs have had three attempts to present this Court with facts to state plausible claims, Defendant's motion is granted with prejudice as to the following claims:

- Plaintiffs Edwards, Butts, Meyers, Jones, Prince, and H. Robinson's failure to promote claims.

- Plaintiff Prince's unlawful termination claims.

- Plaintiff's Edwards, Butts, Meyers, Megginson, Skinner, Prince, and J. Robinson's retaliation claims.

- Plaintiff Skinner's FMLA interference claim.

- Plaintiffs Skinner and Prince's FMLA retaliation claims.

The court will deny Defendant's motion as to the following claims, which, in addition to the claims uncontested by Defendant, include:

- Plaintiff J. Robinson's hostile work environment claim.

- Plaintiff Skinner's unlawful termination claim.

- Plaintiff Skinner's failure to promote claim.

- Plaintiffs Edwards, Butts, Meyers, and Jones's failure to hire claims.

- Plaintiffs Myers, Jones, Megginson, Skinner, J. Robinson, and H. Robinson's disparate wage and overtime claims.

- Plaintiffs Butts, Jones, and J. Robinson's unlawful termination and demotion claims.

- Plaintiffs Jones and H. Robinson's retaliation claims.

The motion to dismiss/strike the class action allegations is also denied.

An appropriate Order follows.