**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT EDWARDS,** *et al.*, | : | **CIVIL ACTION** |
| *Plaintiffs,* | : | |
| | : | |
| v. | : | **No. 23-cv-1789** |
| | : | |
| **JBS SOUDERTON INC.,** | : | |
| *Defendant.* | : | |

**MEMORANDUM**

**KENNEY, J.**                                                                                    **MARCH 19, 2026**

The Federal Rules of Civil Procedure are intended to be "construed, administered, and employed" in a way that "secure[s] the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.  Yet despite this well-settled directive, this case has been pending for almost three years and is nowhere close to completion.  If parties and their attorneys were to litigate every case in this manner, the judicial system would rapidly get bogged down.

After months of delay, multiple attempts to obtain responsive documents from Plaintiffs, and a stipulated motion to compel, on February 5, 2026, Defendant JBS Souderton, Inc. filed a Motion for Terminating Sanctions and Fees (the "Defendant's Motion" or "Motion for Sanctions"). *See* ECF No. 98.  Plaintiffs oppose dismissal and any award of fees.  *See* ECF No. 100.  For the reasons set forth below, the Court will **GRANT** Defendant's Motion (ECF No. 98) and **DISMISS** Plaintiffs' Second Amended Complaint (ECF No. 48) **WITH PREJUDICE**.  The Court will **DENY** Defendant's request for reasonable attorney's fees and costs.

## I.    BACKGROUND

The parties have provided comprehensive backgrounds, *see* ECF No. 98-1 at 2–9; ECF No. 100-2 at 2–4; *see also* ECF No. 82; ECF No. 92 at 2–10, so the Court summarizes additional

background and assumes the parties are otherwise familiar with the facts and procedural history of the case.

On May 15, 2023, a group of *pro se* Plaintiffs initiated this employment and racial discrimination suit as a putative class action. *See* ECF No. 1.[1] The group was arranged by "lead" Plaintiff Robert Edwards,[2] who describes himself as a "[s]elf-trained paralegal in state and federal criminal law and procedures since 1989." ECF No. 92-3 at 154; *id.* at 151 (Plaintiff Edwards is a "[s]elf-employed paralegal" and "Paraprofessional at Law/Paralegal").[3] Plaintiffs asserted claims for failure to hire, failure to promote, hostile work environment, unlawful demotion, unlawful termination, retaliation, and disparate wages. *See* ECF No. 1; *see also* ECF No. 48 (operative complaint); ECF 92-2 at 2 (appendix of remaining live theories).

On October 24, 2023, multiple Defendants moved to dismiss Plaintiffs' Complaint. *See* ECF No. 19. The following week, the *pro se* Plaintiffs filed their first request for an extension of time to respond to Defendants' Motion to Dismiss on the basis that they were seeking to retain counsel. *See* ECF No. 21. The Court gave Plaintiffs a new deadline of December 1, 2023 to file a response. *See* ECF No. 23.

---

[1] This action has been pending for almost three years, but class certification briefing has not yet commenced and was supposed to occur after discovery. *See* ECF No. 69.

[2] Although he is now represented by counsel, Plaintiff Edwards has on occasion filed his own letters and motions on a *pro se* basis, which has caused confusion among the litigants and resulted in withdrawn motions and a cancelled hearing. *See* ECF No. 92-3 at 33; *see also* ECF Nos. 71, 72, 74, 76, 77, 78.

[3] As reflected in the exhibits that Defendant attached to its January 7, 2026 Status Report, Edwards formed and operates Paralex Group, LLC ("Paralex Group"). ECF No. 92-3 at 148–62. Paralex Group "aims to evolve into a scalable multi-million-dollar enterprise within the next five years, delivering significant returns to investors through major lawsuit contingency fees based on final judgments." *Id.* at 157. In addition, Paralex Group "specializ[es] in assisting class action attorneys and pro se litigants," and "provides extensive litigation support services, including legal research, expert jury formation, and expert witness testimony." *Id.*

2

On November 30, 2023, Christopher Markos, Esq. entered his appearance in the action, initially on behalf of only Plaintiff Edwards. *See* ECF Nos. 24, 25.[4]  That same day—one day before the deadline to file a response—Mr. Markos requested an additional extension. *See* ECF No. 25.  Mr. Markos expressly noted that he did "not represent any other plaintiffs in this case" beyond Plaintiff Edwards, but "believe[d] [that] an extension of the deadline as to all parties" was appropriate. *Id.*  The Court again granted the request for an extension and gave all Plaintiffs until January 12, 2024 to file a response. *See* ECF No. 26.

On January 12, 2024, instead of filing a response to Defendants' Motion to Dismiss, Mr. Markos sent another letter to the Court, explaining that additional Plaintiffs had decided to retain his firm and they now believed that an amended complaint should be filed. *See* ECF No. 28 at 1. In light of this, he requested that the Court defer deadlines for responses to Defendants' Motion to Dismiss until the Court could determine how the case should proceed. *Id.* at 2.  The Court held a status conference on January 29, 2024, *see* ECF No. 32, after which the Court again granted all Plaintiffs an extension of time to respond to Defendants' Motion to Dismiss until February 29, 2024. *See* ECF No. 33.  On February 29, 2024, certain Plaintiffs represented by Mr. Markos, Mr. Williams, and Mr. Riback filed a Response to Defendants' Motion to Dismiss. *See* ECF No. 35. Over the course of the next few months, Plaintiffs amended their Complaint twice and terminated most of the Defendants, leaving only Defendant JBS Souderton, Inc. *See* ECF Nos. 40, 48.  On August 21, 2024, the remaining Defendant filed a Partial Motion to Dismiss and Motion to Strike,

---

[4] On December 1, 2023, Gerald J. Williams, Esq. entered his appearance also on behalf of only Plaintiff Edwards. *See* ECF No. 27.  On February 29, 2024, Mr. Markos entered his appearance on behalf of other named Plaintiffs. *See* ECF No. 34.  Mr. Williams has not filed a notice of appearance on behalf of the other Plaintiffs that he supposedly represents. *See* ECF No. 90. Finally, William Riback, Esq. later entered his appearance on behalf of the remaining Plaintiffs in July 2024. *See* ECF Nos. 50, 51.

*see* ECF No. 55, which Plaintiffs responded to after a brief extension was granted, *see* ECF Nos. 56, 57, 58.

On July 8, 2025, after granting in part and denying in part Defendant's Motion to Dismiss, *see* ECF Nos. 62, 63, this action proceeded to discovery. The Court subsequently issued a scheduling order that contemplated fact discovery being completed by February 20, 2026. *See* ECF No. 69. Instead of getting discovery underway, the same delay that characterized the briefing of Defendant's Motion to Dismiss ensued. As recounted in detail in Defendant's Motion for Sanctions and Defendant's January 7, 2026 Status Report, *see* ECF No. 98-1 at 2–9; ECF No. 92 at 2–10, in early September 2025, Plaintiffs served deficient initial disclosures and took several weeks to supplement those disclosures. *See* ECF No. 98-1 at 2; ECF No. 92 at 3–4.[5]

Next, Defendant served its written discovery requests on Plaintiffs on September 19, 2025. ECF No. 98-1 at 3; ECF No. 92 at 4. A few days before Plaintiffs' deadline to file responses, Plaintiffs' counsel requested a 30-day extension. *See* ECF No. 92-3 at 10–11; ECF No. 98-1 at 3. It later came to light during an October 21, 2025 meet and confer that the extension was needed in part because Mr. Riback had failed to send the written discovery requests to his clients when they were served. *See* ECF No. 92-3 at 29–30; *see also* ECF No. 98-1 at 3; ECF No. 92 at 4. During that same October 2025 meet and confer, Plaintiffs' counsel confirmed that they would provide Defendant with "complete, fulsome responses on behalf of each named plaintiff" and that they

---

[5] At first, Plaintiffs did not provide contact information for any of the witnesses that they listed in their initial disclosures and did not list any witnesses for Plaintiffs Myers and Jones. *See* ECF No. 92-3 at 5–6, 13–14. In addition, Plaintiffs made no attempt to quantify their damages, as required by Rule 26(a)(1)(A)(iii). *Id.* at 6, 14. About 80 pages of documents were produced along with Plaintiffs' initial disclosures, which were titled as "Documents in Plaintiff's Possession." *Id.* at 6. While they did not specify which Plaintiff those documents were associated with, Defendant was later able to confirm that they came from Plaintiff Edwards. *Id.* at 14, 24. Plaintiffs served amended initial disclosures on September 29, 2025 that still largely lacked contact information for their witnesses. *Id.* at 16–27.

were "working on collecting all the named [P]laintiffs' communications with one another and other JBS Souderton employees . . . and that Plaintiffs intend to produce all responsive communications without the need for JBS Souderton to serve an additional discovery request on a rolling basis." ECF No. 92-3 at 29–31; *see also* ECF No. 98-1 at 3; ECF No. 92 at 4.  But on November 19, 2025, Plaintiffs, including Plaintiff Edwards, failed to serve any responses to Defendant's Requests for Production, nor did they request an extension of their deadline to do so.  *See* ECF No. 98-1 at 3; ECF No. 92 at 4.  As to Defendant's Interrogatories, only Plaintiff Edwards served a response by the November 19 deadline, but his response contained many deficiencies and was incomplete.  *See* ECF No. 98-1 at 3; ECF No. 92-3 at 58–64, 66–70; *see also infra* at 10 n.8.  Furthermore, Plaintiff Edwards produced documents purportedly responsive to three of Defendant's Requests for Production, but "much of his production consisted of irrelevant pornographic and misogynistic material that was not reviewed by Plaintiffs' counsel before production."  ECF No. 98-1 at 3; *see also* ECF No. 92-1 ¶ 11 (noting that Plaintiffs' counsel "later admitt[ed] he did not know [these materials] were included in the production"); ECF No. 92 at 4.  No other Plaintiffs served written responses to Defendant's Interrogatories or produced any documents by November 19, 2025.  ECF No. 98-1 at 3; ECF No. 92 at 4–5.

Thereafter, it became clear that Plaintiffs and their counsel's communications had broken down.  ECF No. 82 ¶ 6.  During a subsequent meet and confer, Plaintiffs' counsel admitted to Defendant's counsel that the parties were "at an impasse in obtaining Plaintiffs' cooperation" in discovery and in the case.  ECF No. 98-1 at 3 (quoting ECF No. 82 ¶ 6).  The parties thus proceeded to file a joint stipulated motion to compel Plaintiffs to respond to Defendant's written discovery requests, in which they agreed that Defendant could "move for terminating sanctions seeking the dismissal from this action of any of the non-responding Plaintiffs pursuant to Rule 37(b)(2)(A)(v),"

and could move "for an award of its reasonable expenses and attorney fees incurred in seeking Plaintiffs' compliance with their discovery obligations." ECF No. 82 ¶ 11. The Court granted the parties' stipulated motion to compel and set a deadline of December 31, 2025 for all Plaintiffs to "respond fully and completely and without objection" to Defendants' written discovery requests. ECF No. 83 at 1.

On December 31, 2025, eight of the nine Plaintiffs served discovery responses, but, as detailed by Defendant, those responses cannot be considered full or complete. *See* ECF No. 98-1 at 4–9; *id.* at 10–12 (providing a table of a representative sample of Plaintiffs' incomplete discovery responses); ECF No. 92 at 6–9; *see also infra* at 11 n.9. In addition, Plaintiff Jones did not serve his responses until January 13, 2026 because he lost his phone while on vacation and could not contact his counsel to send his responses, despite the fact that his responses were supposedly "complete" before he left for vacation on December 27, 2025. ECF No. 100-2 at 5; ECF No. 98-1 at 5. Furthermore, the majority of Plaintiffs did not produce any documents at all by December 31, 2025, even though several indicated in their responses to Defendant's Interrogatories that they may have responsive documents. *Id.* at 5–6; *see also* ECF No. 98-3 at 1–2.[6]

On New Year's Day, two of Plaintiffs' attorneys suddenly filed notices of withdrawal from the case. *See* ECF Nos. 84, 85. The next day, Plaintiff Edwards filed a Motion in Opposition to his counsel's notices of withdrawal explaining that Plaintiffs were not given any advance notice

---

[6] As of February 5, 2026, Plaintiff Edwards has produced some documents, but Defendant notes that "text messages, emails, or documents from the relevant time to support his allegations of intentional discrimination" appear to be absent. ECF No. 98-1 at 6. In addition, Plaintiffs Myers and Jones "have produced a combined total of nine pages of documents, consisting of a few W-2s and one text exchange between Myers and Edwards." *Id.* No other Plaintiffs have produced any documents. *Id.*; *see also* ECF No. 98-3 at 1–2.

that their counsel would be withdrawing, nor had they provided Plaintiffs with a plan for coverage. *See* ECF No. 86 at 1, 3.[7] The Court immediately struck Plaintiffs' counsel's notices of withdrawal, ordered them to file motions to withdraw and a response to their client's motion, and set a hearing date. *See* ECF Nos. 87, 88. Instead of filing a motion to withdraw or a response, on January 6, 2026, Mr. Markos filed a letter, stating that counsel had resolved their differences with their clients and were "no longer seeking to withdraw from this case." ECF No. 90. After requesting a status report, the Court cancelled the hearing date. *See* ECF Nos. 91, 94.

On February 5, 2026, Defendant filed a Motion for Sanctions and also requested that the depositions of Plaintiffs be rescheduled pending the Court's decision on the Motion for Sanctions. *See* ECF No. 98. The Court permitted the depositions to be rescheduled because minimal discovery had taken place and Defendant represented that it could not take meaningful depositions at this point in the litigation, notwithstanding the nearing deadline for the completion of fact discovery. *See* ECF No. 99. On February 19, 2026, Plaintiffs filed a Response in Opposition to Defendant's Motion for Terminating Sanctions, *see* ECF No. 100, and Defendant subsequently filed a Reply in Support of its Motion for Sanctions. *See* ECF No. 101. Defendant's Motion for Sanctions is now before this Court.

## II.    **LEGAL STANDARD**

Federal Rule of Civil Procedure 37(b)(2)(A) authorizes the Court to issue sanctions when a party "fails to obey an order to provide or permit discovery," which can include "dismissing the action." Fed. R. Civ. P. 37(b)(2)(A)(v); *see also Knoll v. City of Allentown*, 707 F.3d 406, 409 (3d

---

[7] In addition, in his Motion in Opposition to his counsel's notices of withdrawal, Plaintiff Edwards ambiguously represented that other Plaintiffs were still "[r]esponding to JBS interrogatories that require[d] careful legal analysis and coordination." ECF No. 86 at 2 (emphasis omitted). Yet by this time, the deadline to serve written discovery responses had already passed, and no extension was requested or granted. *See* ECF No. 83.

Cir. 2013) ("Both the Federal Rules of Civil Procedure and a court's inherent authority to control its docket empower a district court to dismiss a case as a sanction for failure to follow procedural rules or court orders."). Generally, "[d]ismissal must be a sanction of last, not first, resort" because public policy favors reaching decisions on the merits of a case. *Adams v. Trs. of the N.J. Brewery Emps.' Pension Tr. Fund*, 29 F.3d 863, 878 (3d Cir. 1994) (citation omitted); *see also Knoll*, 707 F.3d at 409. While dismissal of a case is no doubt "an extreme sanction, it is one rightfully in the district courts' toolbox" to be deployed "in appropriate cases." *Adlife Mktg. & Commc'ns. Co., Inc. v. Karns Prime & Fancy Food, Ltd.*, No. 21-2074, 2023 WL 179840, at *3 (3d Cir. Jan. 13, 2023) (internal quotations and citations omitted). Indeed, such a sanction "must be available to the district court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such conduct in the absence of such a deterrent." *Nat'l Hockey League v. Metro. Hockey Club, Inc.*, 427 U.S. 639, 643 (1976).

When determining whether dismissal is warranted as a sanction, a district court balances the following six factors:

> (1) the extent of the party's personal responsibility; (2) the prejudice to the adversary caused by the failure to meet scheduling orders and respond to discovery; (3) a history of dilatoriness; (4) whether the conduct of the party or the attorney was willful or in bad faith; (5) the effectiveness of sanctions other than dismissal, which entails an analysis of alternative sanctions; and (6) the meritoriousness of the claim or defense.

*Poulis v. State Farm Fire & Cas. Co.*, 747 F.2d 863, 868 (3d Cir. 1984) (emphasis omitted). "[N]o single *Poulis* factor is dispositive," and not all factors "need to be satisfied" in order to justify imposition of the sanction of dismissal. *Briscoe v. Klaus*, 538 F.3d 252, 263 (3d Cir. 2008) (internal quotations and citations omitted); *see also United States v. Brace*, 1 F.4th 137, 143 (3d Cir. 2021) (explaining a district court "need not find all six to award sanctions").

Furthermore, "[i]nstead of or in addition to" ordering dismissal pursuant to Rule 37(b)(2)(A), "the court must order the disobedient party, the attorney advising that party, or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the failure was substantially justified or other circumstances make an award of expenses unjust."  Fed. R. Civ. P. 37(b)(2)(C).

## III.  DISCUSSION

The Court addresses each of the *Poulis* factors in turn when determining whether dismissal is warranted for Plaintiffs' failure to comply with the Court's discovery order.  For the reasons discussed below, the Court holds that five factors weigh in favor of Defendant and towards dismissal, and one factor is neutral.  Therefore, dismissal with prejudice is warranted here.

### A.  The Extent of the Party's Personal Responsibility

Regarding the first *Poulis* factor, the Court assesses the extent to which Plaintiffs are "personally responsible" for the delay and discovery deficiencies or whether the delay is attributable to counsel.  *Poulis*, 747 F.2d at 868.

Plaintiffs' counsel is certainly responsible in part for the delay in jumpstarting discovery because counsel admittedly "forgot to send the discovery requests to each of [their] individual clients" when Defendant served them.  ECF No. 92-3 at 29–30.  Almost one month after Defendant served its written discovery requests, Mr. Riback relayed to Defendant's counsel that he "inadvertently downloaded all of the discovery into discrete files for the individual clients, but inadvertently did not email them to the clients."  *Id.* at 32; *cf. Poulis*, 747 F.2d at 868 ("[A] client cannot always avoid the consequences of the acts or omissions of its counsel.").  After a meet and confer in October 2025, Defendant agreed to extend Plaintiffs' time to respond to its written

discovery requests by 30 days if Plaintiffs would serve "complete, fulsome responses on behalf of each named plaintiff."  ECF No. 92-3 at 29–30; ECF No. 98-1 at 3.

Here, there is also significant "record evidence supporting the notion" that Plaintiffs themselves are "personally responsible" for the extensive delay that has occurred during discovery. *Hildebrand v. Allegheny Cnty.*, 923 F.3d 128, 134 (3d Cir. 2019).  As of November 19, 2025, the extended deadline to respond to Defendant's written discovery requests, no Plaintiffs had served any responses to Defendant's Requests for Production, nor did Plaintiffs request an additional extension of their deadline.  *See* ECF No. 98-1 at 3; ECF No. 82 ¶ 5.  As to Defendant's Interrogatories, only Plaintiff Edwards served a response by November 19, albeit a deficient and incomplete one.[8]  *See* ECF No. 98-1 at 3; ECF No. 92 at 4–5; *see also* Fed. R. Civ. P. 37(a)(4) ("[A]n evasive or incomplete disclosure, answer, or response must be treated as a failure to

---

[8] On December 19, 2025, Defendant's counsel sent Plaintiffs' counsel a letter noting that Edwards did not "provide any response to Defendant's Requests for Production" and served a production of "documents that contain pornography."  ECF No. 92-3 at 66.  In addition, Defendant identified in detail the deficiencies that Plaintiff Edwards needed to address with respect to his incomplete responses to Defendant's Interrogatories.  *Id.* at 66–70.  For example, as to Interrogatory No. 1, Edwards did not "identify his job duties for each role and department" for the positions that he held at JBS Souderton.  *Id.* at 66–67.  As to Interrogatory No. 2, Edwards stated that he stored responsive documents on his phone, home computer, email, Facebook, and LinkedIn account, *see id.* at 58, but did not identify his Facebook or LinkedIn accounts by name.  *Id.* at 67.  As to Interrogatories No. 4 and 5, while Edwards listed the names of over 80 witnesses, he did not provide contact information for those witnesses.  *Id.* at 58–59, 67.  In addition, for the majority of his witnesses, Edwards did not indicate what knowledge those witnesses had with respect to the allegations and claims in the action, leaving the Defendant to guess as to how those witnesses might be relevant.  *Id.* at 67.  As to Interrogatory Nos. 12 and 13, Edwards was asked to describe any efforts made to obtain other employment since beginning this lawsuit.  *Id.* at 45, 68.  Edwards referred to his response to Interrogatory No. 9 and listed four employers and positions, *id.* at 61, but did not list the other information requested, such as "when he applied for each position, whether he was offered a job, a description of the position, rate of pay offered, [and] why he declined any offers of employment," among other information.  *Id.* at 68–69; *see also id.* at 45–46.  While Edwards produced "three folders of documents purportedly responsive to Request[s for Production] Nos. 2, 3, and 5," Edwards failed to otherwise indicate whether he had documents responsive to other Requests for Production.  *Id.* at 69.  Moreover, there appeared to be responsive "text messages missing from the production."  *Id.*

disclose, answer, or respond."). The rest of the Plaintiffs did not serve any responses to Defendant's Interrogatories by November 19, 2025. *See* ECF No. 98-1 at 3; ECF No. 92 at 5; ECF No. 82 ¶ 5.

As Defendant continued its attempts to secure belated responses to its written discovery requests and to obtain responsive documents from Plaintiffs, it became clear over the next few weeks that multiple Plaintiffs were no longer even responding to their counsel's outreach. *See* ECF No. 98-1 at 3; ECF No. 92 at 5; ECF No. 82 ¶ 6. Their lack of responsiveness ultimately led the parties to file a stipulated motion to compel on December 11, 2025 because they were "at an impasse in obtaining Plaintiffs' cooperation" in discovery. *Id.* "Given the lack of participation by Plaintiffs in discovery," the parties sought relief from the Court and "jointly request[ed] an order compelling Plaintiffs" to respond Defendant's written discovery requests. *Id.* ¶ 7; *see also id.* ¶ 8. The parties represented that, "absent a Court order compelling these Plaintiffs to respond to the Discovery Requests, they will continue to ignore their discovery obligations." *Id.* ¶ 10. While eight of the nine Plaintiffs ultimately filed discovery responses by the extended December 31, 2025 deadline, those responses were incomplete and deficient, and the majority of Plaintiffs did not produce any documents—even relatively straightforward documents, such as W-2s or pay statements from new employers—despite signaling in their responses that responsive documents may exist.[9] *See* ECF No. 98-1 at 4–12; ECF No. 98-3 at 1–2; ECF No. 92 at 6–9.

---

[9] Multiple Plaintiffs served a joint response to Defendant's Requests for Production, in which they stated that they did not have any responsive documents for seven of the eleven Requests. *See* ECF No. 92-3 at 134–38; *id.* at 142–47 (Plaintiff Myers similarly stating that he does not have responsive documents to many Requests). Yet this answer appears to conflict with other responses that Plaintiffs provided to Defendant's Interrogatories, which at least contemplated responsive documents, the existence of mitigation evidence, and employment-related documents from new jobs. *See, e.g., id.* at 94 (Plaintiff Megginson stating that he may have "[g]roup text messages," and that he "applied to many jobs" before he left JBS Souderton and now works for Imperfect Foods, suggesting he may have job applications and pay statements); *id.* at 101 (Plaintiff Prince

The record thus supports a finding that Plaintiffs are personally responsible for the delay: the majority of Plaintiffs did not provide any responses to Defendant's written discovery requests by the extended November 19, 2025 discovery deadline, and the single Plaintiff that served a response to Defendant's Interrogatories (but not to Defendant's Requests for Production) provided incomplete information that required supplementation. In addition, multiple Plaintiffs stopped engaging with their own counsel and actively ignored their discovery obligations to Defendant without even bothering to request an additional extension of their deadline to respond. Accordingly, the first *Poulis* factor weighs in favor of Defendant because the continued discovery delays, incomplete responses, and minimal discovery provided to date are largely due to Plaintiffs'

indicating in his response to Defendant's Interrogatories that he "submitted three applications daily until employment was obtained in Nov. 2022"); *id.* at 117 (Plaintiff Skinner discussing "cell phone messages"); *id.* at 121 (Plaintiff Skinner identifying "Indeed response" for job applications); *id.* at 172 (Plaintiff Myers stating that he "communicated via Phone Messages & Emails" and is now "employed at QCD"); ECF No. 100-9 at 7 (Plaintiff Myers acknowledging that his "discovery responses could have been more detailed and that [his] document production has been limited to date"); *id.* (Plaintiff Myers stating his "initial interrogatory responses were incomplete").

In addition, Plaintiffs served responses that seemingly were incomplete, evasive, or bare bones, without explaining the contents of messages and emails that many of them now "do not have copies" of or cannot access. *See, e.g.*, ECF No. 92-3 at 172 (Plaintiff Myers stating that he does not have copies of responsive communications or has lost documents); *id.* at 94 (Plaintiff Megginson stating he "cannot determine whether [he] still [has] access to those [text] messages" with Plaintiff Edwards); *id.* at 107 (Plaintiff Robinson stating that "no information was stored relevant to this litigation" from a cellphone); *id.* at 111 (Plaintiff Robinson failing to "recall specific names" of coworkers who he alleges or believes were afforded more overtime opportunities); *id.* at 118 (Plaintiff Skinner referring back to a previous response, rather than identifying the areas of knowledge that the witnesses he listed supposedly have with respect to the facts and circumstances); *id.* at 122 (Plaintiff Skinner identifying "[a]ll Spanish coworkers" broadly as being paid more than him, without identifying any names); ECF No. 98-3 at 6–7 (Plaintiff Jones referring back to his response to Interrogatory No. 4 and to Plaintiffs' initial disclosures, without specifying areas of knowledge of witnesses); *id.* at 7 (Plaintiff Jones answering "[s]ee above" to Interrogatory Nos. 6 and 7 without indicating which prior response he was referring to).

The foregoing consists of a representative sample of the deficiencies that are scattered throughout Plaintiffs' responses, which Defendant has also catalogued in detail. *See* ECF No. 98-1 at 3–12.

12

own actions (and inaction) and their failure to cooperate during discovery. *See Cox v. United Parcel Serv., Inc.*, 753 F. App'x 103, 105 (3d Cir. 2018) (agreeing with the district court that the first *Poulis* factor weighed in favor of dismissal where the plaintiff "made no effort to get and disclose his tax returns").

## B. Prejudice to the Adversary

Regarding the second *Poulis* factor, "[e]vidence of prejudice to an adversary" provides "substantial weight" in favor of dismissal. *Briscoe*, 538 F.3d at 259 (internal quotations and citation omitted). Prejudice to an adversary can be demonstrated by "the irretrievable loss of evidence, the inevitable dimming of witnesses' memories, or the excessive and possibly irremediable burdens or costs imposed on the opposing party." *Adams*, 29 F.3d at 874 (internal quotations and citation omitted). But "prejudice is not limited to 'irremediable' or 'irreparable' harm" and can include, for example, "the burden imposed by impeding a party's ability to prepare effectively a full and complete trial strategy," *Briscoe*, 538 F.3d at 259 (citations omitted), or "deprivation of information through non-cooperation with discovery." *Adams*, 29 F.3d at 874. Prejudice frequently arises when there are discovery disputes because one of the parties was "deprived of necessary information or had to expend costs to obtain court orders for compliance." *Briscoe*, 538 F.3d at 259; *see also Poulis*, 747 F.2d at 868 (finding prejudice to a defendant where "interrogatories were never answered nor were objections filed; defense counsel was obliged to file a motion to compel answers").

The second *Poulis* factor weighs substantially in favor of Defendant and towards dismissal. After an extension and in the face of a stipulated motion to compel, Plaintiffs failed to fully and completely respond to Defendant's written discovery requests by December 31, 2025. *See* ECF No. 98-1 at 4–12 (detailing deficiencies in responses); ECF No. 92 at 6–9. It has been over five

13

months since Defendant served its written discovery requests, and six of the nine Plaintiffs have failed to produce any documents. ECF No. 98-1 at 3, 6. Indeed, two weeks before fact discovery was set to be completed, Defendant was still at a point where it could not prepare to take meaningful depositions of Plaintiffs, given the minimal discovery that Plaintiffs have provided to date. *Id.* at 9, 17. Plaintiffs' actions have impeded Defendant's ability to defend against Plaintiffs' claims and to buttress its affirmative defenses. *Id.* at 17. For example, Plaintiff Edwards listed over 80 witnesses that supposedly have information related to his claims, yet did not provide contact information for the majority of those witnesses and did not identify each witness's area of knowledge, leaving Defendant largely to guess at how those witnesses are relevant to the litigation. ECF No. 92-3 at 58–59, 67. Furthermore, Plaintiffs' incomplete initial disclosures have hindered Defendant's ability to reach out to third parties who may have relevant knowledge, to engage in third party discovery, and to evaluate mitigation evidence. ECF No. 98-1 at 17. Discovery is a two-way street, and the record demonstrates that Defendant has been prejudiced in developing its defenses by Plaintiffs' "non-cooperation with discovery." *Adams*, 29 F.3d at 874; *see also Shields v. Wiegand*, No. 24-3050, 2025 WL 3043377, at *2 (3d Cir. Oct. 31, 2025) (per curiam) (affirming dismissal where a plaintiff "repeated[ly] refus[ed] to provide the defendants with discovery that was unquestionably relevant to his claims and necessary for [defendants] to prepare a defense").

## C. A History of Dilatoriness

Regarding the third *Poulis* factor, "[e]xtensive or repeated delay or delinquency constitutes a history of dilatoriness, such as consistent non-response to interrogatories, or consistent tardiness in complying with court orders." *Adams*, 29 F.3d at 874. The time limits that are put in place both by the Federal Rules of Civil Procedure and the Court "serve an important purpose for the expeditious processing of litigation," and a pattern of "ignoring these time limits is intolerable."

14

*Poulis*, 747 F.2d at 868; *see also Ware v. Rodale Press, Inc.*, 322 F.3d 218, 224 (3d Cir. 2003) (finding a pattern of dilatoriness where plaintiff repeatedly failed to "provid[e] a damages calculation . . . in anything close to a timely and thorough fashion"); Fed. R. Civ. P. 1.  A party's dilatory actions "must be evaluated in light of its behavior over the life of the case." *Adams*, 29 F.3d at 875.

There has been a consistent stream of delays over the course of this case, which culminated in Defendant's Motion for Sanctions.  For instance, it took almost one full year just to brief Defendant's Motions to Dismiss due to Plaintiffs' multiple requests for an extension of their time to respond and their indecision as to which allegations, claims, Plaintiffs, and Defendants should appear in their complaint. *See supra* at 2–4.  Delay has continued to permeate this case throughout discovery.  As explained above, Plaintiffs' counsel initially forgot to send Defendant's written discovery requests to Plaintiffs. *See* ECF No. 98-1 at 3.  Next, after Defendant agreed to an extension of their written discovery deadline, all Plaintiffs failed to serve responses to Defendant's Requests for Production by November 19, 2025. *Id.*  Only one Plaintiff served a response to Defendant's Interrogatories, which was deficient and incomplete. *Id.*; *supra* at 10 n.8.  When it became clear that Plaintiffs were no longer in contact with their own counsel, the Court granted the parties' stipulated motion to compel and further extended their deadline to serve full and complete responses to Defendant's written discovery requests until December 31, 2025. *See* ECF No. 83.  Yet even with the weight of dismissal sanctions hanging over them, only eight of nine Plaintiffs served responses on time, which were similarly deficient, *see infra* at 11 n.9, and almost all Plaintiffs failed to produce any responsive documents by the second extended deadline. *See* ECF No. 98-1 at 4–12; ECF No. 98-3 at 1–2; ECF No. 92 at 6–9.

As of February 5, 2026 when Defendant filed its Motion for Sanctions, the majority of Plaintiffs still had not produced any documents and the parties are no closer to determining when Plaintiffs will fulfill their discovery obligations.  For example, on February 18, 2026, Plaintiff Myers certified that he is "committed to full cooperation" and is "actively working to" obtain additional documents for production.  ECF No. 100-9 at 7.  But his Court-ordered deadline to "respond fully and completely . . . to Defendant's Requests for Production" was December 31, 2025, *see* ECF No. 83 at 1, and no further extension was requested or granted; nor is there *any* indication as to when he will actually make an additional production beyond the three pages of documents that he previously produced.  *See* ECF No. 98-3 at 2; *see also id.* at 5 (Plaintiff Jones stating that he "is checking his Facebook communications where co-workers contacted Plaintiff . . . to see if they would have relevant information concerning the hostile work environment," but providing no timeline as to when those communications may be produced); *id.* at 9 (Plaintiff Jones stating that he "will produce a list of providers" related to his medical treatment, but providing no indication as to when that will occur or why the list was not included as part of his response to Defendant's Interrogatories).  Cases would not be able to proceed in an efficient manner if litigants had the ability to miss court-imposed deadlines and produce responsive documents at their leisure.  Plaintiff Myers' deposition was originally scheduled to take place at the beginning of February before the Court permitted the parties to reschedule depositions pending a decision on the Motion for Sanctions.  If the Court had not done so, Defendant would have had to take Plaintiff Myers' deposition without the documents that he is supposedly working to obtain, which may have necessitated a further deposition; litigation simply cannot proceed in this piecemeal manner.

Accordingly, the third *Poulis* factor also weighs in favor of Defendant and towards dismissal.  This is not a situation where there has only been "one failure to comply in a timely

16

manner." *Poulis*, 747 F.2d at 868. As is demonstrated by the record, Plaintiffs have exhibited a history of dilatoriness over the lifetime of this case that has impeded it from proceeding in a manner that is efficient and fair to all parties involved.

**D.  Whether the Parties' or Attorneys' Conduct Was Willful or in Bad Faith**

Regarding the fourth *Poulis* factor, a district court assesses whether the parties or counsel engaged in "the type of willful or contumacious behavior which [can be] characterized as 'flagrant bad faith,'" *Adams*, 29 F.3d at 875 (citation omitted), such as "intentional or self-serving behavior." *Briscoe*, 538 F.3d at 262 (internal quotations and citations omitted); *see also* *Hildebrand*, 923 F.3d at 135 (explaining that willful behavior may include "failing to answer interrogatories for nearly a year and a half, demanding numerous extensions, ignoring admonitions by the court, and making false promises to correct delays").

This factor, too, weighs in favor of Defendant and towards dismissal. Both Plaintiffs and their counsel have exhibited "self-serving behavior" throughout discovery. The Court begins with Plaintiffs and need look no further than the stipulated motion to compel, in which the parties agreed that they were "at an impasse in obtaining Plaintiffs' cooperation" in discovery. ECF No. 82 ¶ 6; *see also id.* ¶ 7 (discussing "lack of participation by Plaintiffs in discovery"). Indeed, the parties represented that "absent a Court order compelling these Plaintiffs to respond to the Discovery Requests, they will continue to ignore their discovery obligations." *Id.* ¶ 10. Plaintiffs' lack of responsiveness to their own counsel and their blatant disregard for their obligations to litigate this case were intentional. And there are multiple instances of similar behavior throughout discovery.

As explained above, all Plaintiffs failed to respond to Defendant's Requests for Production by the extended November 19, 2025 deadline. *See* ECF No. 98-1 at 3. Only one Plaintiff served responses to Defendant's Interrogatories that were incomplete and accompanied by a production

17

that included irrelevant pornographic and misogynistic material.  *Id.*; *see also supra* at 10 n.8. While all but one Plaintiff did finally serve responses to Defendant's written discovery responses by December 31, 2025, as Defendant described in detail in its Motion for Sanctions, a review of those responses reveals that they are similarly incomplete, evasive, and, at times, inconsistent when compared to other responses that they provided, particularly with respect to mitigation evidence. *See* ECF No. 98-1 at 4–12; *see also supra* at 11 n.9.

Plaintiffs submitted supplemental certifications, dated February 18 and 19, 2026, which supposedly demonstrate their ongoing commitment to discovery.  *See* ECF Nos. 100-9, 100-10, 100-11, 100-12, 100-13, 100-14, 100-15, 100-16.  But these belated certifications only highlight that Plaintiffs' earlier decisions to ignore and not fully comply with their discovery obligations were intentional and unreasonable.  After their deadline had already been extended once, the Court ordered Plaintiffs to provide full and complete responses by December 31, 2025, based on the representations made by the parties in their stipulated motion to compel.  *See* ECF No. 83. Plaintiffs' recent submissions of supplemental certifications appear to this Court to be self-serving attempts to defeat Defendant's Motion for Sanctions, and they do not provide the Court with any reassurance that Plaintiffs will comply with their discovery obligations in a timely manner moving forward.

For instance, Plaintiff Butts asserts that he did not previously produce his W-2s because they were "in the attic of [his] house."  ECF No. 100-11 at 6.  Responsive documents have thus been in Mr. Butts' possession all along and there is no explanation as to why he did not check his own household for documents before the deadline to comply had passed.  As another example, Plaintiff Skinner admitted that responsive documents exist, but that he has not produced any documents. *See* ECF No. 100-15 at 15–16.  He asserts that they are located on a previous phone,

he is "working to recover" them, and "will supplement [his] production once [he] recover[s] access," but provided no timeline to the Court as to how long that process will take. *Id.* at 16–17. Plaintiff Skinner also states that responsive "[j]ob applications and Indeed responses" can be located through his email account on his phone, but does not explain why those documents were not pulled from his account and provided to Defendant. *Id.* at 17–18. Moreover, Plaintiff Myers now represents that he is "working to obtain records of my JBS applications submitted through Indeed," in addition to "W-2 forms and pay stubs from employment since leaving JBS," and "[e]mployment records from post-JBS employers," *see* ECF No. 100-9 at 5–6, notwithstanding that he represented in many of his responses to Defendant's Interrogatories that he "does not have any responsive documents." ECF No. 92-3 at 144 (Plaintiff Myers stating that he does not have responsive pay statements or W-2s).

Accordingly, these supplemental certifications and admissions only serve to further demonstrate Plaintiffs' overall lack of diligence in discovery. The parties and the Court cannot simply stay the case for an unspecified period while Plaintiffs take their time to locate and produce responsive documents, especially when the parties' six-month period for fact discovery was already set to close on February 20, 2026. Indeed, if the Court had not permitted the parties to postpone Plaintiffs' depositions, Defendant would have had to take their depositions in early February 2026 without the additional factual information that Plaintiffs now belatedly proffer in their supplemental certifications. This behavior can only be characterized as self-serving. *See Emerson v. Thiel Coll.*, 296 F.3d 184, 191 (3d Cir. 2002) (affirming dismissal where a plaintiff's "conduct in failing to comply with the court's orders and in dragging the case out was willful and not merely negligent or inadvertent").

19

As to Plaintiffs' counsel, their actions throughout discovery have also demonstrated willfulness. On October 22, 2025, Plaintiffs' counsel assured Defendant's counsel that they were "working on collecting all the named [P]laintiffs' communications with one another and other JBS Souderton employees, . . . and that Plaintiffs intend to produce all responsive communications . . . on a rolling basis." ECF No. 92-3 at 29–30; *see also* ECF No. 98-1 at 6. Yet as of the date of Defendant's Motion for Sanctions, the majority of Plaintiffs still have not produced any documents at all, despite indicating that responsive documents may exist. *Id.* at 3, 6; ECF No. 98-3 at 1–2; *see also Hildebrand*, 923 F.3d at 135 (explaining that willful behavior may include "making false promises to correct delays"). In addition, Plaintiffs' counsel apparently did not review Plaintiff Edwards' document production before providing it to defense counsel, as is evidenced by the inclusion of irrelevant pornographic and misogynistic material in that production. *See* ECF No. 98-1 at 3; *see also* ECF No. 92-1 ¶ 11. It also appears to this Court that Plaintiffs' counsel has made little to no effort to independently collect and examine their clients' phones so that responsive documents could be copied for production to Defendant, despite the fact that their clients have stated they may have responsive documents on their devices. For example, Plaintiff Edwards states that he has "offered [Defendant] the opportunity to meet with [him] to allow them to access [his] communications through" LinkedIn and Indeed because he "do[es] not know how to download all of the communications received relevant to [his] job search." ECF No. 100-16 at 4–5. This should have prompted Plaintiff Edwards' counsel to assist him with his production, and it defies belief that they did not do so, particularly when they assured Defendant's counsel that they were "working on collecting" Plaintiffs' communications and would be producing responsive documents. ECF No. 92-3 at 29–30.

20

In addition, on New Year's Day while the Court was closed, two of Plaintiffs' attorneys filed notices of withdrawal, one day after the deadline for Plaintiffs to comply and serve written discovery requests, which this Court subsequently struck. *See* ECF Nos. 84, 85, 87. Without an explanation for their actions, the Court can only presume that counsel did so because they were aware that Plaintiffs did not meet the Court's December 31, 2025 deadline to respond fully and completely to Defendant's written discovery requests. Indeed, one Plaintiff admittedly did not serve his discovery responses until two weeks after the December 31, 2025 deadline had passed. *See* ECF No. 100-2 at 5. Furthermore, Plaintiff Edwards represented in his opposition to their notices of withdrawal that Plaintiffs' counsel did not provide their clients with any notice that they would be withdrawing from the case in the midst of discovery. *See* ECF No. 86 at 1–2. There is no reasonable excuse for such behavior.

Accordingly, the record supports a finding that Plaintiffs' and their counsel's delay, failure to meet discovery deadlines, and failure to cooperate has been willful. This *Poulis* factor weighs in Defendant's favor and towards dismissal as well. *See, e.g.*, *Nat'l Hockey League*, 427 U.S. at 643 (upholding dismissal where there was "flagrant bad faith" on the plaintiffs' part, in addition to "callous disregard" by counsel "of their responsibilities").

### E. Effectiveness of Alternative Sanctions

Regarding the fifth *Poulis* factor, before a district court dismisses a case, it "must consider the availability of sanctions alternative to dismissal" and whether those would prove effective. *Briscoe*, 538 F.3d at 262–63; *see also Adams*, 29 F.3d at 876. Federal Rule of Civil Procedure 37(b)(2)(A) provides a menu of other sanctions that the Court may order, in addition to dismissal, such as staying the proceedings or rendering a default judgment. *See* Fed. R. Civ. P. 37(b)(2)(A)(i)–(vii).

21

None of these alternative sanctions would prove effective in this action. For instance, the alternatives of (1) directing that "facts be taken as established for purposes of the action," or (2) "prohibiting the disobedient party from supporting or opposing designated claims or defenses, or from introducing designated matters in evidence" are inapplicable with respect to the instant discovery dispute where Plaintiffs have failed to respond fully and completely to written discovery requests and have not produced responsive documents. Fed. R. Civ. P. 37(b)(2)(A)(i)–(ii). In addition, "striking" Plaintiffs' written discovery requests and requiring new ones would only further delay the case, *see* Fed. R. Civ. P. 37(b)(2)(A)(iii); nor is the Court convinced that Plaintiffs would be able to cure their deficient responses in a timely fashion because their counsel has already represented that these responses are the results of their "best efforts to answer Defendant's discovery requests." ECF No. 100-2 at 6. For similar reasons, further staying the proceedings until Plaintiffs comply would prove ineffective and simply "reward[] [Plaintiffs] for stalling." *Cox*, 753 F. App'x at 106; *see also* Fed. R. Civ. P. 37(b)(2)(A)(iv). Furthermore, since Plaintiffs are the ones who are seeking affirmative relief, but who have been disobedient during discovery, "rendering a default judgment against" them would be inapplicable. Fed. R. Civ. P. 37(b)(2)(A)(vi); *see also* Fed. R. Civ. P. 55(a). Finally, given Plaintiffs' failure to produce responsive documents and "failure to respond [fully and completely] to discovery requests under the threat of dismissal, additional threats of contempt and monetary sanctions [are] unlikely to induce [Plaintiffs'] compliance" and cooperation with discovery. *Cox*, 753 F. App'x at 106; Fed. R. Civ. P. 37(b)(2)(A)(vii). Therefore, the Court finds that the fifth *Poulis* factor weighs in favor of Defendant and towards dismissal.

### F. Meritoriousness of the Claims

Regarding the sixth *Poulis* factor, when "considering whether a claim or defense appears to be meritorious for this inquiry, [courts] do not purport to use summary judgment standards." *Poulis*, 747 F.2d at 869. Instead, a claim is considered meritorious if "the allegations of the pleadings, if established at trial, would support recovery by plaintiff or would constitute a complete defense." *Id.* at 869–70; *see also Briscoe*, 538 F.3d at 263 ("[I]n determining whether a plaintiff's claim is meritorious, we use the standard for a Rule 12(b)(6) motion to dismiss for failure to state a claim."). "When both sides can make out prima facie cases, this factor can be neutral." *Cox*, 753 F. App'x at 106.

Several of Plaintiffs' claims survived Defendant's Motion to Dismiss, but at this stage—and with minimal discovery having been conducted to date to bolster their claims—it is difficult for the Court to fully assess the meritoriousness of Plaintiffs' claims. Moreover, Defendant asserted several defenses in its Answer, *see* ECF No. 64 at 27–30, and has indicated that it may be attempting to develop a defense related to causation and whether there is sufficient proof of intentional racial discrimination. *See* ECF No. 98-1 at 22. Therefore, the Court finds that this factor is neutral because both parties "can make out prima facie cases" at this point. *See Cox*, 753 F. App'x at 106.

\* \* \*

Dismissal with prejudice is an "extreme sanction," and the Court does not undertake it lightly, but the buck has to stop somewhere. *Adlife Mktg. & Commc'ns. Co., Inc.*, 2023 WL 179840, at \*3 (citation omitted). The Court will not countenance Plaintiffs' repeated delays, lack of cooperation, failure to comply with court-ordered deadlines, and failure to engage in good faith in discovery in a timely, efficient manner. Nor will the Court permit Plaintiffs' and their counsel's behavior over the course of this action to encourage other litigants to follow a similar dilatory path.

*See Nat'l Hockey League*, 427 U.S. at 643.  Having carefully evaluated the record and having assessed all of the *Poulis* factors, the Court finds that five out of six factors weigh in favor of Defendant and towards dismissal, and one factor is neutral.  No factors weigh affirmatively in favor of Plaintiffs.  Accordingly, the Court will grant Defendant's Motion (ECF No. 98) and dismiss Plaintiff's Second Amended Complaint (ECF No. 48) with prejudice.

### G.  Defendant's Request for Reasonable Attorney's Fees Is Denied

In addition to requesting relief in the form of dismissal sanctions, Defendant requested that the Court award Defendant its reasonable expenses, including attorney's fees, pursuant to Rule 37(b)(2)(C).  *See* ECF No. 98-1 at 23–24.  Because the Court is dismissing the action with prejudice, the Court declines to award attorney's fees and costs at this time.  Given that dismissal is a severe sanction in and of itself, this is a circumstance in which also granting an award of attorney's fees leans towards qualifying as "unjust."  Fed. R. Civ. P. 37(b)(2)(C).

However, if the case were not being dismissed, the Court would otherwise order Plaintiffs' counsel to pay Defendant's reasonable attorney's fees upon Defendant's submission of a proper affidavit of fees and costs.  "[W]hen an attorney advises a client in discovery matters, he assumes a responsibility for the professional disposition of that portion of a lawsuit and may be held accountable for positions taken or responses filed during that process."  *Devaney v. Cont'l Am. Ins. Co.*, 989 F.2d 1154, 1162 (11th Cir. 1993).  The Federal Rules of Civil Procedure provide for sanctions, "in part, to remind attorneys that service to their clients must coexist with their responsibilities toward the court, toward the law[,] and toward their brethren at the bar."  *Id.*  Plaintiffs' counsel's actions throughout discovery have not adhered to the standards of professionalism that this Court requires of litigants: as explained above, (1) they admittedly forgot to send their clients copies of Defendant's written discovery requests when they were served; (2)

24

they permitted irrelevant pornographic and misogynistic material to be transmitted to defense counsel; and (3) they attempted to withdraw from the case in the midst of discovery on New Year's Day—one day after their clients served deficient discovery responses and one client failed to serve any discovery responses at all—without even notifying their clients that they were planning to withdraw.

Nevertheless, it does not escape the Court that attorneys can only advance a case and fulfill their duties if their clients fully cooperate and respond to them.  For instance, as to the transmission of pornographic materials, the Court can only presume that Plaintiff Edwards did not provide his counsel with those materials until right before the deadline to serve them, such that counsel may not have had adequate time to review the contents before serving them on Defendant.  Moreover, here, the record reflects that several Plaintiffs were evasive and ignored counsel's outreach for weeks at a time.  Undoubtedly, Plaintiffs' failure to timely respond to their own counsel impeded counsel's ability to help them develop full and complete written discovery responses.  The Court is therefore mindful of the fact that the clients themselves share a significant portion of fault for the stonewalling and delays that have plagued this action from the start.

## IV.   **CONCLUSION**

For the foregoing reasons, the Court will grant Defendant's Motion (ECF No. 98) and dismiss Plaintiffs' Second Amended Complaint (ECF No. 48) with prejudice.  The Court denies Defendant's request for attorney's fees.  An appropriate Order will follow.

BY THE COURT:

/s/ Chad F. Kenney

_____

**CHAD F. KENNEY, JUDGE**

25